20-1171 from the Western District of Missouri, Jacqueline Morgan v. James Ferrell, et al. Good morning, Your Honors. May it please the Court, Cameron Grant for the appellants. The facts of this case are straightforward, Your Honors. Ms. Morgan alleges that in 2018 she sold her company and went to work for Ferrell Gas. She alleges that she was recruited by Ferrell Gas founder and CEO, James Ferrell, and also a board member, Pamela Bruckman. She alleges that along the way during the recruitment process, they made misrepresentations to her and also neglected to tell her material facts, essentially to the effect that there was some kind of power struggle going on at Ferrell Gas. Ms. Morgan eventually accepted employment at Ferrell Gas in September of 2018, and according to her, things didn't go too well. She alleges that she was discriminated against on the basis of her sex and then retaliated against when she complained about that conduct. Ferrell Gas eventually terminated her employment in January of 2019. It is undisputed that when she accepted her employment, Ms. Morgan signed an employment agreement with Ferrell Gas dated September 27, 2018. That agreement contains an arbitration provision. It provides that any dispute, whether the dispute sounds in contract, tort, or otherwise, arising out of or relating to this agreement or its breach, or the employment relationship of the parties, shall go fully and finally settled by binding arbitration. Counsel, this is Judge Logan. Let me cut right to the quick here. This case got much more complicated for me when I took the trouble to read the complaint. And the complaint starts out in counts one and two and claims against the defendant, which was clearly Ferrell Gas. Then in three, from three to seven, it alleges claims, various tort claims against defendants, including officers and agents and so forth. It's worded. I wouldn't have worded it this way, but it's clearly against all defendants for each claim. And it harks back to fact assertions as to misrepresentations and omissions, both before and after the employment agreement. Now, then the district court says all claims against Ferrell Gas are to be arbitrated and no claims against the individual defendants are to be arbitrated. What's next if we affirm? If your honors were to affirm, this case would proceed on two different tracks. Wait, wait, wait, wait. The whole problem is timing. And whichever track goes first, what, what, what, what, uh, what, uh, rescue Dakota or collateral estoppel effect does that have? I think that is one of the problems with proceeding in the way that the district court ruled. So wait, wait, wait. What first question was any of any of that discussed in the district court in the hearing or in the briefs? I didn't see it in the court's order. No, your honor, this particular issue was not discussed. I know Miss Morgan did argue that it is possible to proceed in this way, not discuss this. Well, wait, the federal arbitration act says arbitration goes first. So the arbitrator goes first. Now, what the heck is the arbitrator supposed to do? When the F one, the evidence is, is clearly includes the, well, that when the claim is that the bad guys were the officers who made feral gas, do it. And that's exactly our point is that if arbitration were to proceed against feral gas, I'm sorry, go ahead. Your honor. Well, that's not, no. The point is this case looks like if we, whether we just simply affirm or reverse, it's a disaster. Because I don't think reversing would be a disaster at this. If the district court's order is averse, then this case will proceed under one arbitration, which is what we believe should happen. I think there may be, there may be specific claims against the individuals that don't, that don't qualify for arbitration under the third party doctrine and others that do. So your honor, I'll proceed to that point. Our position is that all the claims are subject to arbitration. And I think Miss Morgan's counsel would agree that the starting point for the analysis is the eighth court's decision in CD partners, LLC versus grizzle. Both cases, both parties discuss that case quite extensively. And in that case, the eighth circuit said a non-signatory can enforce an arbitration clause against a signatory to the agreement in several circumstances. So there are three. Now, quoting from CD partners, the first is where the relationship between the signatory and non-signatory is sufficiently close that only by permitting the non-signatory to invoke arbitration, may a disseration of the underlying arbitration agreement between the signatories be avoided. Now, there are two more. I'm paraphrasing now. The second is where the signatory must rely on the written agreement in asserting its claims. And the third is when the signatory's claims arise out of and relate directly to the written agreement. Now, I think this is important for the analysis on this appeal is that in CD partners, the eighth circuit said, we believe both circumstances. Not sure why they said both instead of all three, but regardless, they proceeded. We believe both circumstances are present here. The relationship between signatory CDWI and the non-signatory appellants is a close one. The tort allegations against the three appellants all arise out of their conduct while acting as officers of CDWI. Now, the district court, Judge Boo, seized upon the third circumstance that I just described in distinguishing CD partners. Judge Boo said that in CD partners, the court had found that all the claims arose out of and related directly to the contractual agreement. But that's not the case here because, as Your Honor said, some of the claims involved representations that predated the agreement. But that is not the circumstance in CD partners that we are relying upon to argue that the appellants should be able to compel arbitration in this case. We are arguing that the relationship between the individual appellants and Feral Gas Inc. is sufficiently close that they should be able to compel arbitration under the agreement. And another important point to address what Your Honor was asking about is that Miss Morgan never claimed and never disputed in the district court that all of the claims she raised in this case, alleged in this case, fall within the scope of the arbitration agreement. So if this court finds that the relationship between the individual appellants and Feral Gas Inc. is sufficiently close that they can compel arbitration, that means all the claims go to arbitration. So that begs the question, how do you determine whether or not the relationship is sufficiently close that James Feral and Pamela Berkman can compel arbitration? We cited a lot of cases that are brief. I would like to run down quickly what we believe are the best four cases that support our position. All four were cited in both our briefs, so I won't give the full cites, but the first is a Missouri Supreme Court case, Nitro Distributing Inc. v. Dunn. In that case, the court addressed the question of whether the appellant Blanchard could compel arbitration even though he was not a party to the arbitration agreement. Isn't the timing different in that one? Wasn't there an arbitration agreement in existence at the time that the other events occurred, or am I confusing that case with something else? I believe you're correct, Your Honor. So another case that I'll address is Bol v. Torbett, and that was a Missouri Court of Appeals case. In that case, very similar to this one, there were misrepresentations that predated the agreement. That seems to me to be your best case. I know it's not a Missouri Supreme Court case, but that one seems to be as close as you can get of the other three that you're going to talk about. Yeah, I would agree, Your Honor. That one is actually very similar to this case. So in that case, the plaintiff, Bol, alleged that Torbett fraudulently induced him to enter into real estate contracts with Bol's company, which was called Trace. There was an arbitration agreement between Bol and Trace but not Bol and Torbett personally, so the Missouri Court of Appeals said Torbett was acting as an agent of Trace. The Bols focused on Torbett's statements prior to the execution of the contracts. However, the court proceeded, Torbett is the founder and managing member of Trace. He was acting on behalf of Trace at all times. They acknowledged that he interacted with them as the founder and manager of Trace. Your Honor is exactly correct. That is virtually identical to the situation here, where even though some of the allegations will predate the employment agreement, there is no dispute. And Ms. Morgan cannot reasonably argue that at all times, Mr. Farrell, who was the founder and CEO, and Ms. Brookman, the board member, were acting on behalf of Farrell Gas. There's simply no other capacity in which they would have been acting. Counsel, this is Judge Goss. Let me follow up on that just for clarity. So is it your position that there are no actions alleged in any of the claims by the defendants in which the defendants were not acting as agents of Farrell Gas? That is correct, Your Honor, and it's not just an argument that I'm making, but that's actually an allegation made in the amended complaint. So if you look at paragraph three of the amended complaint, Ms. Morgan alleges at all times relevant herein, defendant Farrell served as the president of defendant Farrell Gas, Inc., a member of the board of directors of defendant Farrell Gas, Inc., and chairman, chief executive officer, and president of defendant Farrell Gas, Inc. Similar to Ms. Brookman, paragraph four of the amended complaint, at all times relevant herein, defendant Brookman served as a member of the board of directors of defendant Farrell Gas, Inc. And then if you look at the substantive allegations of the complaint, and I'll just point the court briefly to paragraphs 18 and 20 as to defendant Brookman, plaintiff alleges that she was acting as, quote, an agent and representative of defendant Farrell Gas, Inc. Then, as to Mr. Farrell, paragraphs 28 and 30, defendant Farrell, as an officer, agent, and representative of defendant Farrell Gas, did not disclose, etc. And even though they didn't use those magic words at every single place in the amended complaint, there is no other capacity in which Mr. Farrell and Ms. Brookman were acting. Now, I do want to go back briefly to the Missouri Supreme Court's case in Nitro Distributing v. Dunn. So, again, the question there was whether the appellant Blanchard could compel arbitration. So the court held, this court's holding that Nitro is bound to arbitrate under the PRONET arbitration clause is complicated by the fact that not all of the 18 appellants are members of PRONET. However, PRONET itself can compel arbitration under the express language of the PRONET terms and conditions, and Nitro concedes that appellant Blanchard, who is sued in his capacity as an officer of PRONET, has the same rights as PRONET. Your Honors, the fact that Blanchard was an officer of PRONET was sufficient in the Missouri Supreme Court's view to enable him to compel arbitration. So there is no distinction here between Farrell Gas and the individuals who were acting on Farrell Gas's behalf. As the Eighth Circuit noted in C.D. Partners, they said, C.D.W.I.'s promises could only be fulfilled by the future conduct of its corporate officers, employees, and agents. The same is true here. Farrell Gas does not act except through its individual officers and agents. Klanit has alleged that in all times, that is what Mr. Farrell and Ms. Brueggemann were. There is no allegation anywhere in the complaint that they were acting in any way other than in that capacity. So under the Eighth Circuit's precedent in C.D. Partners and Missouri State Court precedent, as Judge Kobus noted, Bolters v. Torbett is maybe our best case, and I did just want to briefly point the court to two other cases that I was going to talk about, Sprague v. Household International and Madden v. Elsperman. Those are, I think, our two other best cases. They're both cited in our briefs. If there are no further questions, I'll reserve my remaining time for questions. Counsel, I do have a question. I mean, your interpretation of the complaint. Count 3 on all the operative provisions, allegations, says defendants through their officers and agents, consistent with what you've just been arguing. But Count 4 alleges defendants including its officers or agents. Count 5, defendants through their officers and agents. OK, we're back to there. And then Count 6 is through their officers and agents. But Count 4 is not. Well, Your Honor. Count 4 is fraudulent misrepresentation by omission. Correct. Which is pretty much a crucial part of the pre-contract wrongs as described in the briefs. So that tort claim is not pleaded in the way you state. Your Honor, Paragraph 133, which is part of Count 4, says defendants through their officers and agents, omitted, etc. What that's referring to is James Sparrow and Pamela Hurd. I'm talking about 134, 135. So those paragraphs say defendants including its officers and agents. Again, the officers and agents referred to in those paragraphs are James Sparrow and Pamela Brutman. Wait, who's any other defendants? There are three defendants in the case. Feral Gas Inc., James Sparrow, Pamela Brutman. When these allegations are talking about the recruiting process, Ms. Morgan is referring to James Sparrow and Pamela Brutman. And Ms. Morgan is calling them officers and agents. I understand the argument and the supporting authorities. I just think everybody in this case has ignored the complaint. And you have not entirely fairly summarized it, at least as I read it. But I haven't read the whole record. Your Honor, I believe that all the allegations against Mr. Feral and Ms. Brutman allege that they were acting as officers or agents of Feral Gas. I think that's a fair characterization of the amended complaint. And if that's true, then they are entitled to compel arbitration. Thank you, Mr. Graham. Okay. Am I on the screen, Your Honor? Yeah, you just came online. Yes. Okay. May it please the court. So, going straight to the issue, Your Honor, that you raised, we didn't think about that. I don't know how all of the lawyers involved in this case missed something that you identified at first blush as it relates to the petition. And what I guess what I would say about that, Judge, is as it relates to the procedural posture that we're in now and the appeal that we're before the court today on, we are not the movement. We responded to the issues that they addressed. And so, Judge, I would just like to start out, Your Honors, by saying this. The case that everyone's looking at is Seedy Partners versus Grizzle and what this court is... Let me just stop you on the what comes next. It seems to me the Federal Arbitration Act almost demands in this situation that the arbitrable claims get resolved before the not arbitrable claims. And unless you disagree, shouldn't we order that? Well, Judge, I guess that depends on how you order that. Just the way I said it, as the last line in an opinion that otherwise affirms. That would be an affirm with instructions. Intended to avoid a second or third appeal. I'm not sure I've ever been in this situation before. These are not issues that were briefed, so I haven't thought about them carefully. What I've thought about carefully is the brief that has been filed and the way the issues have been framed that are currently before this court. All rest upon this court applying Seedy Partners in order to reach the conclusion that my clients are going to be compelled to arbitration in a case that is actually distinguishable from Seedy Partners. Counsel, this is Judge Grimes. Let me back up. Maybe I'm missing something here, but I still need to have you explain to me what actions are alleged in any of the claims in which the defendants are acting in any manner other than as agents for feral gas. Judge, I'm not going to tell you that there is such a scenario because I think the honest review of the not only the pleadings, but the facts in this case is that Brookman and feral the conversations that they had that led to both the fraudulent misrepresentation and also the also the omission. I think counsel said earlier he doesn't know any way they could have acted in any capacity other than in their capacities. Brookman wasn't an employee. She was a director, but judge, I don't know that there is any other way. My concern is that I'm maybe similarly confused. I just want to confirm that all the allegations against the individual defendants relate to the agency relationship between those individuals in the company. Is that correct? And I'm sorry. This is probably the third time you've been asked this, but I'm similarly confused. No, that you're correct. However, your honor, the way that we got here today, the reason that we're before this court is because we filed this case in state court. It got removed to federal court, and the defendants are seeking to enforce an arbitration agreement that in paragraph 20 of the arbitration agreement makes no mention of anyone other than the corporate defendant. And then it goes on to state the agreement contains a binding arbitration provision, which may be enforced by the parties. And that doesn't sync with what this court has said in CD Partners, because this court explicitly recognized in CD Partners in page point eight that in that case, the arbitration agreement specifically included franchisors, officers, directors, and employees. So what they're asking the court to do. I don't know how the court gets there because they're asking. What about Bull versus Torbett? Isn't that on point? Similar to the facts here. And why? Why isn't that? It's not controlling, at least persuasive. Go ahead, sir. I'm sorry to interrupt you. We looked at. Torbett and we couldn't ascertain in Torbett whether or not the arbitration agreement in Torbett included directors, officers and agents. And I think that the. That the situation that we find ourselves in here is being honestly. Feral gas is asking the court to engage in rewriting a contract that they wrote. They are the ones that failed to mention directors, agents, officers, any of those. And the decision in CD Partners versus Grizzle is premised upon the fact that those folks were indeed included. And so. Where it intended to start out today is at the time that the. The fraud occurred in this case, my client had never seen this arbitration agreement. What's in Bull versus Torbett? I mean, I'm quoting from the case here. The relationship between the signatory and non signatory defendants. What is non signatory be other than they didn't? They're not on the agreement or perhaps maybe they didn't sign it. Is that the argument? Yes, sir. In fact. In this case, the distinction between a non signatory and someone not included in the contract is you can be included in the language. And in every release that I've ever signed, which is where this usually comes up, releasing the corporate entity and the directors, officers, agents. In the language and in the body of the arbitration agreement, they could have included directors, agents, officers, et cetera. And only one person would have sucked off on a signatory to me means that they didn't sign the agreement. But if they are specifically referenced and mentioned in the agreement, whether or not their signatory in the issue. But gentlemen, I'll just be honest with you. I tell his honor brought this up at the outset and said, what were you all looking at? If you weren't looking at the first amended petition that intertwines. Parties. I don't know what we were looking at, Judge. I guess we all should have looked at it closer. I just I find myself here in the court of appeals because they are attempting to compel my clients to arbitrate citing CD partners where I don't believe it applies because there is no language mentioning those folks. And and that's what Judge Booth seized upon as well. Basically, he seized upon the fact that. They drafted this contract, and if they intended to include agents, officers, directors and employees as individuals, that was their responsibility to have included that. And they didn't. So. That's what we think this appeal fails. Counsel, I haven't. I haven't looked at this. Have you looked at whether the restatement of either contracts or agency addresses this question of non-signatory or non-included parties being able to enforce? I have not. Whether it's arbitration or otherwise.  I'm. Candidly, I am focusing on what I was going to say to the court today. I was mostly interested in pointing out the distinction of CD partners and pointing out to the court that they drafted this arbitration agreement and they failed to include Farrell and Brookerman. And. And so that that's. I guess I'm coming back to Judge Gomez's question. I. I'm not seeing why a non-signatory would not include Farrell and Brookerman. Well, because they didn't make any mention as they did in CD partners, they did not include it's in the. In the appendix at pages 44 to 46. The court can take a look at the actual agreement that we're that we're here about. And the council, by definition, isn't a non-signatory someone who's not included. No, I don't think that's true, Judge. I think if they would have included within the body of the contract that the contract intended to apply to and cover directors, agents and officers, only one person is going to sign the agreement. Anytime you sign any contract with a corporation and the the contract is said to release or in this case, compel arbitration as it relates to agents, officers, directors, et cetera. Not all those people sign it. One person signs up for the contract. Sometimes it's a lawyer. Council when I look at CD partners, what I see is that the. The holding there is to prevent evisceration of the arbitration agreement. And the arbitration agreement here is to resolve disputes arising out of the employment relationship. So if we allow the non-signatories here to avoid arbitration, why would that not eviscerate the arbitration? Well, we we certainly are arbitrating the underlying Missouri Human Rights Act claims and judge, we could have. We could have filed this suit individually against Brookerman and against Farrell. So. I mean, it is their burden judge in these cases. As the 8th Circuit has looked at this issue, there's always been the issue of we're going to apply Missouri contract law. And these employment cases, the bear case that we cited was our case. We handled that in the first instance, the district court has to decide if there's a binding contract between the parties. And under Missouri law, if you don't include these individuals, they're not covered by the agreement and they didn't include them. They they talked about the corporation, but their own language says this agreement contains a binding arbitration agreement, which may be enforced by the parties, period. And in subparagraph 20, they don't include agents, officers and directors. And in CD partners and in the other cases that we looked at, we couldn't tell in Torbett whether or not there was language in that arbitration agreement that specifically included agents, officers and directors. But but they are asking you to expand on CD partners. If the court doesn't have any other questions, I really don't have anything other than that to say, I would say this. This whole issue in the brief of is CD partners a one step test or a two step test? I don't know if the court's going to address that or not. The defendants seem to indicate that all they have to do is indicate that there is a sufficiently close relationship between the parties. And we think step two is to show that the underlying contract would be eviscerated. And I don't know my understanding of eviscerated would not include that we've already been sent off to arbitration and we're going to arbitrate the Missouri Human Rights Act claims. I have nothing further unless the court has other questions of me. Very good. Thank you. Thank you, Judge. And Judge, I wish I'd have thought about your question before I came before the court today. Well, your honor, is that there is one point I would like to make briefly in about 30 seconds. However, I'm out of time, so I need the court's permission to do that. Give you 30 seconds. Thank you, your honors. So Mr. Graham is correct that in some cases the arbitration that agreement specifies that it applies to officers, directors, etc. But in those cases that enables those people to enforce the agreement on a third party beneficiary theory. That's not our argument. We're not arguing that we're third party beneficiaries. And there's a reason that all the Torbett didn't discuss whether that language existed in the contract in that case. And that's because it doesn't matter. If there's a sufficiently close relationship, then non-signatories can enforce the agreement regardless of whether they're third party beneficiaries or not. That's the point I wanted to make. Very good. Thank you, counsel. Thank you, your honors. It's been thoroughly, thoroughly briefed and oral argument has been helpful, at least for me. And it's an unusual issue. We'll take it under advisement.